IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE STATE OF SOUTH CAROLINA, *ex. rel.* Alan M. Wilson, in his official capacity as Attorney General of the State of South Carolina,<br><br>Plaintiff,<br><br>vs.<br><br>3M COMPANY; EIDP, INC., *f/k/a* E.I. DUPONT DE NEMOURS AND COMPANY ("Old DuPont"); THE CHEMOURS COMPANY ("Chemours"); THE CHEMOURS COMPANY FC, LLC ("Chemours FC"); CORTEVA, INC. ("Corteva"); and DUPONT DE NEMOURS, INC. ("New DuPont"),<br><br>Defendants. | MDL No. 2:18-mn-2873-RMG<br><br>This Document Relates To<br>Civil Action No.: 2:23-cv-05979-RMG<br><br>**STATE OF SOUTH CAROLINA'S REPLY IN SUPPORT OF ITS MOTION TO REMAND[1]** |

I.   **Introduction**

It would not be appropriate for this Honorable Court to extend its jurisdiction to this case because the Plaintiff State of South Carolina (the "State") confines the injury and the damages it seeks due to contamination of its natural resources by PFAS products *other than* aqueous film forming foam ("AFFF"). The State has brought a separate case that specifically addresses and includes contamination from AFFF, which is currently and properly before this Honorable Court. That action provides 3M with a federal forum for the only claims to which a federal contractor defense is colorable.

3M attempts to expand the application of federal officer jurisdiction based on conjecture

---

[1] Pursuant to this Court's prior case management orders, Co-Lead Counsel authorized the filing of South Carolina's Motion to Remand.

1

that, despite the Plaintiff's plain words, AFFF products are the real issue in this non-AFFF case. 3M's speculation cannot support extension of jurisdiction. Nor can 3M establish federal enclave jurisdiction when the predicate necessities do not exist and the State has expressly disclaimed seeking damages in this case for any PFAS coming from federal enclaves. Accordingly, the State of South Carolina respectfully moves this Honorable Court to remand this case to proper jurisdiction in state court.

## II.  Argument

Because the Plaintiff's well-pled Complaint provides no basis for the exercise of federal jurisdiction, 3M has the burden of showing that federal officer removal is proper. See Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)) ("[The] burden of establishing federal jurisdiction is placed upon the party seeking removal."). 3M does not dispute this point, but instead argues that it need only make plausible allegations in support of federal officer removal. (3M Company's Opposition to Plaintiff's Motion for Remand, ECF No. 11 (the "Opposition" or "Opp.") at 9). In proving it was acting under a federal officer, a defendant must prove a "causal nexus 'between the charged conduct and asserted official authority,'" meaning the defendant took the at-issue action because the Government instructed it. Ripley v. Foster Wheeler, LLC, 841 F.3d 207, 210 (4th Cir. 2016) (quoting Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999)). Establishing this nexus may create a "colorable federal defense," government-contractor immunity, as to the charged conduct. Sawyer v. Foster Wheeler, 860 F.3d 249, 252 (4th Cir. 2017). 3M notes "a federal defense is colorable 'unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous.'" Opp. at 23 (citing Moore v. Elec. Boat Co., 25 F.4th 30, 37 (1st Cir. 2022)). 3M has failed to meet its burden.

Because this suit does not assert claims based on AFFF-caused contamination, and because 3M did not manufacture or distribute PFAS commercial or consumer products under direction from the U.S. Government, 3M cannot assert federal-contractor immunity to the claims in this action. "Deny[ing] remand of this case would affirm [Defendant's] right to assert a defense against a claim that does not exist." Kelleher v. A.W. Chesterton Co., No. 15-CV-893, 2015 WL 7422756, at *2-3 (S.D. Ill. Nov. 23, 2015).

**1. This Case has No "Connection or Association" to AFFF Produced for the Federal Government**

3M never suggests that the household, commercial, or industrial PFAS products at issue in *this* case have a connection to federal authority, were made to military specifications, or were otherwise manufactured under "color of" federal office. Plainly, the federal government had no involvement or oversight with respect to the PFAS manufactured by Defendants which are used in burger wrappers, pizza boxes, or stain repellants and have contaminated the State's natural resources.

As the Fourth Circuit instructs, a defendant seeking removal under § 1442(a)(1) must demonstrate a "nexus" to federal authority—which requires a showing "'that the *charged conduct* was carried out for or in relation to the asserted official authority.'" Mayor of Balt. v. BP P.L.C., 31 F.4th 178, 219 (4th Cir. 2022) (emphasis added; citation and brackets omitted). 3M does not seek to demonstrate that the "charged conduct" in this case was "carried out for or in relation to" federal authority. 3M does not assert that it was acting under a federal officer or serving a government purpose when it manufactured and distributed PFAS-containing commercial products. Even generously construing 3M's relationship to the Government, the charged conduct here relates to a wholly separate product and business function.

3

While the federal officer removal statute may be liberally construed by courts, "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 147 (2007). 3M is asking this Honorable Court to exercise its limited jurisdiction based on speculation about the potential of some commingling between AFFF and non-AFFF. Where, as here, there are two distinct products causing damages, a state court may properly assess and allocate damages attributable to non-AFFF PFAS. 3M argues that because the State alleges PFAS contamination is mobile, AFFF contamination must be commingled at non-AFFF sites in South Carolina. Opp. at 2. The State has submitted a detailed declaration of a state agency employee to the contrary, explaining that AFFF and other PFAS-caused contamination are distinguishable. 3M has not presented any evidence contradicting Mr. Reynolds' declaration.[2]

As the State noted in its initial briefing, courts have rejected 3M's argument that possible AFFF "commingling" is sufficient to trigger federal officer removal jurisdiction. As the Court correctly observed in Maine, "the federal officer defense will not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves non-AFFF sources." Maine, 2023 WL 4758816 at *10.

Because the State is not seeking any AFFF damages in this case, the federal contractor defense cannot arise:

> [T]here is no scenario under which 3M could be found liable for any damages caused by AFFF. That is, regardless of whether 3M's AFFF conformed to a

---

[2] 3M goes to great length in its Opposition to highlight alleged deficiencies in the Declaration of Scott Reynolds, a Senior Scientist in Environmental Affairs Administration at the South Carolina Department of Health and Environmental Control ("DHEC"). 3M has not critiqued or refuted Mr. Reynolds' confirmation that "PFAS compounds have been found by DHEC testing in locations where there is no known historical use of AFFF." Reynolds Dec. at ¶ 19. The State submitted the Declaration of Mr. Reynolds as Exhibit 1 to its Memorandum of Law Supporting the State's Motion to Remand and incorporates the same herein.

> specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF.

New Hampshire, 665 F. Supp. 3d at 227-28. Although 3M claims New Hampshire and Maine were "wrongly decided," the logic of these decisions is sound — a lawsuit that disclaims recovery for AFFF cannot "relate to" 3M's federal actions. New Hampshire, 665 F. Supp. 3d at 228; Maine, 2023 WL 4758816, at *10. Illinois ex rel. Raoul v. 3M Co. was recently remanded following the same logic. No. 4:22-CV-04075, 2023 WL 6160610 (C.D. Ill. Sept. 21, 2023).

In Raoul, the State of Illinois brought an action in state court to recover for PFAS contamination released from 3M's Cordova facility on the Mississippi River and, as here, disclaimed recovery for "any PFAS that have contaminated Illinois' environment or natural resources from aqueous film-forming foams ("AFFF") containing . . . PFAS compound[s]." Id. at *1 (alterations in original). Despite Illinois' disclaimer, 3M removed the case on the basis that non-AFFF contamination likely "overlap[s]" with AFFF contamination from the "U.S. Military at the Rock Island Arsenal, twenty-five miles downstream from the Cordova Facility" and so triggered the federal officer removal statute. Id. at *2.

The court in Raoul properly declined to exercise jurisdiction, noting that "[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." Id. at *5 (quoting Reinbold v. Advanced Auto Parts, Inc., Case No. 18-CV-605-SMY-DGW, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018)). Importantly, the Raoul Court squarely rejected 3M's argument that a federal court had to determine whether certain contamination in the Mississippi River was attributable to MilSpec:

> This Court does not disagree that Defendant could point to PFAS contamination from the use and storage of MilSpec AFFF at the Rock Island Arsenal as an alternate source of the contamination that is the basis of this suit. But even without asserting the federal government contractor defense as to that source of

5

> contamination, Defendant cannot be held liable for contamination from the Rock Island Arsenal. In other words, once Defendant shows that a certain portion of the contamination stemmed from MilSpec AFFF released from the Rock Island Arsenal, that contamination is eliminated from the case, whether or not that MilSpec AFFF was produced according to rigorous military specifications and the government was warned of any dangers of which it was unaware.

Raoul at *6.[3]

Although already addressed in the State's opening memorandum, 3M erroneously relies on this Honorable Court's ruling in In re: AFFF Prods. Liab. Litig., MDL No. 2:18-mn-2873-RMG, (D.S.C. Oct. 1, 2019), ECF No. 325 ("Ridgewood Water") for the proposition that remand should be denied "because the parties will need to litigate whether and how any portion of the alleged contamination at sites throughout South Carolina resulted from MilSpec AFFF." Opp. at 18. This Honorable Court denied remand in Ridgewood Water in part because it found a factual dispute which could make the federal contractor defense and "official acts" potentially relevant to the claims at issue in that case. See Ridgewood Water Order at 2-3. Although the plaintiff in Ridgewood Water attempted to disclaim injury from MilSpec AFFF, the disclaimer was not comprehensive because of the plaintiff's failure to exclude contamination from one site where MilSpec AFFF "could have been used."[4] Id.

3M mischaracterizes the decision by the MDL court in the Ridgewood Water matter. Although the plaintiff there "disclaim[ed] any injuries traceable to MilSpec AFFF," it included claims for injuries based on "commercial AFFF use by non-federal consumers." See Ridgewood

---

[3] Notably, in Raoul, 3M argued in its Notice of Removal that the Baker decision required a federal court to decide whether "the pollution arose from [3M's] federal acts." Raoul, 2022 WL 1195996, at 41 (quoting Baker, 962 F.3d at 945). The District Court appropriately concluded this 7th Circuit precedent was not controlling, as the "the actions under federal directive must relate to the claims brought in the suit" for federal officer jurisdiction to lie. Raoul, 2023 WL 6160610, at *4 (citing Baker, 962 F.3d at 943).

[4] Ridgewood Water's disclaimer was "to the extent AFFF is a cause of Ridgewood's injuries, it is limited to commercial AFFF used by non-federal consumers at fire readiness and suppression sites in Northern Bergen County, New Jersey." Ridgewood Water, at 3.

Water Order at 2-3. In ruling that these claims for "commercial AFFF to non-federal users" conferred federal officer jurisdiction, this Honorable Court reasoned that "[d]esigning AFFF products to military specifications promulgated by the Department of Defense, . . . as [defendants] allege, may constitute 'acting under' the military's guidance." Id. at 4. Here, in stark contrast, the State has not made claims for injury from any kind of AFFF in this action, regardless of whether it was sold to federal or non-federal users, so Ridgewood Water does not support 3M's position. Similarly, 3M's reliance upon a footnote in the Baker v. Atlantic Richfield Co., 962 F.3d 937 (7th Cir. 2020) opinion is misguided. Like Ridgewood and Nessel v. Chemguard, Inc., 2021 WL 744683 (W.D. Mich. Jan. 6, 2021),[5] the Baker case involved an incomplete disclaimer. Incomplete disclaimers, like those in Baker and Ridgewood Water fail to satisfy the "or related to" clause in Section 1442(a)(1), because the at-issue products are similar in design and serve similar functions (i.e. MilSpec AFFF compared to non-Milspec AFFF). South Carolina's case is more similar to Maine, New Hampshire, and Raoul in that the suits involve completely different products with completely different purposes. As stated, commercial PFAS products that caused contamination in South Carolina are distinct from AFFF products such that their manufacture and distribution is not "related to" 3M's AFFF products. Because South Carolina made a complete and unequivocal disclaimer here, this Honorable Court should not rely on 3M's cited cases as a basis to deny the State's Motion to Remand.

**2. 3M's Federal Contractor Defense is Not Colorable**

In this suit, South Carolina is not asserting any AFFF claims. Because South Carolina did not assert AFFF claims, 3M cannot assert a government contractor defense to those unasserted claims. 3M highlights that "the State cannot limit the defenses that 3M raises . . . ." Opp. at 2.

---

[5] 3M's erroneous reliance on Nessel is discussed in depth in the State's opening memorandum.

However, it is well established that "to remove a case under § 1442(a)(1), . . . defendant must show . . . that it has a '*colorable* federal defense.'" BP, 31 F.4th at 228 (emphasis added; citation omitted). A "colorable" defense must necessarily be a "defense to *Plaintiff's claims for relief*." Batchelor, 185 F. Supp. 3d at 1362 (emphasis added). 3M is seeking to invoke federal removal jurisdiction to assert a defense for a claim that Plaintiff has not asserted.

Nevertheless, 3M asserts that "it will be necessary to evaluate whether any portion of the alleged PFAS contamination is, or is not, attributable to MilSpec AFFF and/or to other PFAS sources" and "the need for the fact-intensive inquiry necessarily makes this case 'connected to or associated with' MilSpec AFFF." Opp. at 15, 21. 3M's arguments are a red herring. In any case with multiple contributing sources of injury, a fact-finding process may be needed to determine the degree to which the injury was caused by the claims that the plaintiff asserted. But that does not in and of itself give rise to federal jurisdiction. If an injury is wholly or partially caused by claims that "do not exist" in a case, the plaintiff will not recover for that portion of the injury.

Although 3M continually asserts it is entitled to raise a federal contractor defense relating to MilSpec AFFF despite South Carolina's disclaimer, those MilSpec "claims . . . simply do not exist" in this case. See Batchelor v. Am. Optical Corp., 185 F. Supp. 3d 1358, 1363–65 (S.D. Fla. 2016) ("Westinghouse, therefore, cannot raise a colorable federal defense to Plaintiff's claims because Westinghouse's sole basis for removal is its contention that Plaintiff was exposed to asbestos while aboard the U.S.S. Gato, which is not at issue in this case. In other words, Westinghouse cannot assert a colorable federal defense based on government contractor immunity because such a defense "pertains to claims that simply do not exist.'"). It is axiomatic that defenses to nonexistent claims are not colorable.

### A. Jurisdiction cannot be created simply to resolve factual disputes.

Federal officer removal exists to ensure that a federal court resolves a federal defense; it does not exist to ensure that a federal court conducts the injury causation analysis. As stated, "a defense cannot be asserted simply to create jurisdiction," Moore v. Elec. Boat Co., 25 F.4th 30, 37 (1st Cir. 2022). This Honorable Court found a triable issue of fact exists as to the U.S. Government's knowledge of dangers presented by AFFF. Order and Opinion Denying Defendants' Motion for Summary Judgment, In re: AFFF Prods. Liab. Litig., No. 2:18-MN-2873-RMG (D. S.C. Sept. 16, 2022). However, since this case is not about AFFF, what the Federal Government knew and at what time is not relevant to the State's claims. Rather, "a remand motion is not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense," Cuomo v. Crane Co., 771 F.3d 113, 117 (2d Cir. 2014). In Cuomo, the Defendant introduced "several affidavits and numerous documentary exhibits" indicating that the military contractor where the plaintiff's decedent worked was acting under detailed instructions from the Navy and that the Navy was well aware of the risks of asbestos. Id. at 116. The plaintiff submitted competing evidence merely challenging the "accuracy or reliability" of that evidence, which created a "factual dispute" on the merits of the federal officer defense. Id. In Cuomo, the specificity of the Government's instructions was at issue. That issue is distinguishable from the issue here, which is whether the Government issued instruction causing the charged conduct. Ultimately, the Cuomo court found "the inquiry on … remand is purely jurisdictional," and that parties should not be required to engage in fact-intensive discovery to resolve a jurisdiction issue. Id. at 116. Since the question here is: "Was the charged conduct undertaken with Federal instruction?' and the answer is, "No," further factual inquiry on the issue of jurisdiction is not necessary.

Additionally, were this Honorable Court to retain South Carolina's case, the State would

9

lose its sovereign authority to assert non-AFFF harms regarding state land in a forum of the State's choosing. "[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." Franchise Tax Bd v. Constr. Laborers Vacation Trust, 463 U.S. 1, 21 n.22, 103 S.Ct. 2841, 77 L.E.2d 420 (1983). "Judicial scrutiny is especially important in the context of removal, where considerations of comity play an important role." In re Standard & Poor's Agency Rating Litigation, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014) (quoting Veneruso v. Mount Vernon Neighborhood Health Ctr., 933 F. Supp. 2d 613, 618 (S.D.N.Y. 2013). "And the importance of such scrutiny is at its zenith where, as here, the suit was brought by a State itself, as 'the claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form.'" Standard & Poor's, 23 F. Supp. 3d at 392 (quoting Nevada v. Bank of Am. Corp., 672 F.3d 661, 676 (9th Cir. 2012).

### 3. There is no Federal Enclave Jurisdiction.

3M's continued attempt to assert that federal enclave jurisdiction exists in this matter does not comport with applicable law. Binding precedent provides that federal enclave jurisdiction "requires that *all* pertinent events take place on a federal enclave." BP, 31 F.4th at 219 (emphasis added). Despite case law to the contrary, 3M insists that it can demonstrate federal enclave jurisdiction by pleading that the State's "claims arise *partly* from federal enclaves." Opp. at 29. (emphasis added). 3M's logic is that the State's complaint encompasses alleged PFAS contamination throughout South Carolina, that there are federal enclaves in South Carolina, and that by extension the court can exercise jurisdiction *over part of this case* using federal enclave as a basis which then allows "supplemental jurisdiction" over the rest. Opp. at 29-30.

3M's argument lacks merit. Federal enclave jurisdiction is subject to the well-pleaded complaint rule, so federal jurisdiction is appropriate only where the complaint reveals

10

that the claims arose on federal enclaves. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006). In the federal enclave context, "[c]ourts presume that federal jurisdiction does not exist over a removed case unless the defendant can affirmatively show otherwise." New Mexico ex. Rel. Balderas v. Monsanto Co., 454 F. Supp. 3d 1132, 1146 (D.N.M. 2020). The removing party has the "burden of proving subject matter jurisdiction" and "because removal raises 'significant federalism concerns,' removal . . . must be strictly constructed, and all doubts must be resolved in favor of remaining the case to state court." Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005).

Courts have repeatedly rejected attempts to assert federal enclave jurisdiction where only some of the alleged conduct or injury occurred on a federal enclave. See, e.g. Rhode Island v. Shell Oil Prod. Co., 35 F.4th 44, 58 (1st Cir. 2022) ("[T]he doctrine of federal enclave jurisdiction generally requires that *all* pertinent events take place on a federal enclave."); Maine, 2023 WL 4758816, at *11 (rejecting assertion of federal-enclave jurisdiction because 3M could not "plausibly" contend "that all pertinent events [took] place on a federal enclave" and because, in any event, the State "disclaimed any AFFF claims, including those arising from a federal enclave"); State v. Monsanto Co., 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017), aff'd, 738 F. App'x 554 (9th Cir. 2018) (finding federal enclave jurisdiction exists only where the claim arises on the federal enclave—not nearby or adjacent to it). 3M does not argue that all pertinent events occurred on a federal enclave. The State is not seeking relief for contamination of federal territories and does not have standing to do so; instead, the State is seeking relief for non-AFFF contamination to its own natural resources, which definitionally are not federal enclaves. 3M's attempt to render *the entire State of South Carolina* subject to federal enclave jurisdiction would stretch the limited federal enclave doctrine well past its original intention and defy the well-pleaded

11

complaint doctrine and disregard the State's authority to bring claims for its own resources separate from the Federal government's responsibility to oversee its separate properties.

3M's supplemental jurisdiction argument also fails. In the case on which 3M relies, the State of New York alleged that MilSpec AFFF "were used by the Air National Guard and the United States Air Force on military bases and at civilian airports." In re: AFFF, 2019 WL 2807266, at *1 (D.S.C. May 24, 2019). In short, New York state brought claims that were related to the use of AFFF on federal enclaves (Griffis Air Force base). Accordingly, this Honorable Court held that removal was proper as to Griffis and exercised supplemental jurisdiction over claims related to the other bases. Id. at *4. Unlike New York, South Carolina has not brought claims for the use of AFFF on federal enclaves, but has expressly excluded injuries arising from such contamination and instead simply seeks statewide relief for the damages caused to the State's natural resources from non-AFFF PFAS.

3M has failed to meet its burden in establishing federal enclave jurisdiction.

### III.     Conclusion

For the foregoing reasons and those in the State's Motion and supporting documents, this Honorable Court should remand this action to the Richland County Court of Common Pleas.

    Respectfully submitted,

    s/Michael D. Wright

    ALAN M. WILSON, Fed. ID# 10457
    Attorney General of South Carolina
    W. JEFFREY YOUNG, Fed ID# 6122
    Chief Deputy Attorney General
    C. HAVIRD JONES, JR., Fed. ID# 2227
    Senior Assistant Deputy Attorney General
    JARED Q. LIBET, Fed. ID# 9882
    Assistant Deputy Attorney General
    KRISTIN M. SIMONS, Fed. ID# 10167
    Senior Assistant Attorney General

DANIELLE A. ROBERTSON, Fed. ID# 14007
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA**
P.O. Box 11549
Columbia, South Carolina 29211
(803) 734-8044
SJones@scag.gov
KSimons@scag.gov
DaniRobertson@scag.gov


Vincent A. Sheheen, Fed. ID# 7016
Michael D. Wright, Fed. ID# 11452
**SAVAGE ROYALL & SHEHEEN, LLP**
P.O. Drawer 10
1111 Church Street
Camden, South Carolina 29020
(803) 432-4391
VSheheen@thesavagefirm.com
mwright@thesavagefirm.com


A. Gibson Solomons, III, Fed. ID# 7769
**SPEIGHTS & SOLOMONS, LLC**
P.O. Box 685
100 Oak Street, East
Hampton, South Carolina 29924
(803) 943-4444 (Tel); (803) 943-4599 (Fax)
GSolomons@speightsandsolomons.com

Jonathan M. Robinson, Fed. ID# 7755
Austin T. Reed, Fed. ID# 13405
Frederick N. Hanna, Jr., Fed ID# 13826
**SMITH ROBINSON HOLLER DUBOSE & MORGAN, LLC**
2530 Devine Street
Columbia, South Carolina 29205
803-254-5445 (Tel)
803-254-5007 (Fax)
Jon@smithrobinsonlaw.com


Pursuant to CMO 2A, filed with the Approval of,

13

                              s/Michael A. London
                              Douglas and London PC
                              59 Maiden Lane, 6th Floor
                              New York, NY 10038
                              Phone: 212-566-7500
                              mlondon@douglasandlondon.com

February 9, 2024                 Plaintiff's Co-Lead Counsel

## CERTIFICATE OF SERVICE

   I hereby certify that on this date, I caused the foregoing to be filed with the Clerk of this Court via CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                <u>/s/ Michael D. Wright</u>
                Savage, Royall, & Sheheen, LLP

February 9, 2024